RECEIVED
IN LAKE CHARLES, LA
JUN - 8 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| IN RE: JOSEPH MICHAEL RUEBUSH and MIRIAM DENISE MORGAN RUEBUSH | : DOCKET NO. 06 CV 0344 |
| | : JUDGE MINALDI |
| | : MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Joseph Michael Ruebush and Miriam Denise Morgan Ruebush ("Debtors") appeal an order from the bankruptcy court denying their motion for contempt against Dr. Marcus L. Pittman ("Pittman").

Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 et seq. on March 10, 2003 (the "Petition Date"). On June 24, 2003 Debtors received a discharge pursuant to section 727. On October 10, 2003, the bankruptcy court entered the Final Decree, thereby closing the proceeding.

On the Petition Date, a civil lawsuit entitled *Marcus L. Pittman, M.D. v. Howard M. Riggs, III, M.D., Joe M. Ruebush, R.N., and St Patrick Hospital of Lake Charles*, in the 14th Judicial District Court for the Parish of Calcasieu (the "State Court Action"), was pending against Mr. Ruebush.[1] In the State Court Action, Pittman alleged that he was defamed by two of the defendants, Howard M. Rigg, III, M.D. ("Rigg") and Mr. Ruebush, both of whom were

---

[1] The State Court Action carries Docket No. 91-6643.

employees of the third defendant, St Patrick Hospital of Lake Charles ("St. Patrick").[2]

On October 19, 2005, Ruebush filed a Motion to Reopen Chapter 7 Case based upon Pittman's alleged violation of the discharge injunction of 11 U.S.C. § 524(a). The Motion to Reopen was granted on October 27, 2005. As the discharge released Ruebush from any personal liability in the State Court Action, Ruebush filed a Motion for Contempt (the "Motion") against Pittman seeking to have the bankruptcy court compel Pittman to dismiss him from that suit.

In opposing the Motion, Dr. Pittman argued that while he is enjoined by section 524 from seeking any recovery from Mr. Ruebush, strategic considerations, particularly evidentiary in nature, require Mr. Ruebush to remain as a named defendant in the State Court Action.

On January 3, 2006, after notice and hearing, the Bankruptcy Court issued a Memorandum Ruling denying the Motion. Ruebush now appeals.

## Standard of Review

In reviewing the decision of the bankruptcy court, this court functions as an appellate court and applies the same standards of review generally applied in federal court appeals. *Matter of Webb*, 954 F.2d 1102, 1103-04 (5th Cir.1992); *Matter of Coston*, 991 F.2d 257, 261 n. 3 (5th Cir.1993) (en banc) (citing *Matter of Hipp, Inc.*, 895 F.2d 1503, 1517 (5th Cir.1990)). Conclusions of law are reviewed *de novo*. *Matter of Herby's Foods, Inc.*, 2 F.3d 128, 131 (5th Cir.1993). Findings of fact, on the other hand, are not to be set aside unless clearly erroneous, and due regard must be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses. Fed. R. Bankr.P. 8013; *Herby's Foods, Inc.*, 2 F.3d at 130-31.

---

[2] Dr. Pittman also asserts that the facts alleged in the State Court Action also support claims for malicious prosecution, abuse of rights and intentional infliction of emotional distress.

## Law and Analysis

A discharge in bankruptcy issued pursuant to 11 U.S.C. § 727 "...operates as an injunction against the commencement or continuation of an action...or any act, to collect, recover or offset any... debt as a personal liability of the debtor..." 11 U.S.C. § 524(a)(2). However, rather than extinguishing the debt altogether, the discharge "...merely releases the debtor from personal liability for the debt," leaving the liability of any other entity on such debt unaffected. *In re Edgeworth*, 993 F. 2d 51, 53 (5th Cir. 1993); *see also* 11 U.S.C. 524(e). Therefore, a creditor may be permitted to establish the debtor's nominal liability for a claim solely for the purpose of collecting the debt from a third party. *Id.; see also In re Walker*, 927 F.2d 1138, 1142 (10th Cir. 1991) ("It is well established that this provision permits a creditor to bring or continue an action directly against the debtor for the purpose of establishing the debtor's liability when, as here, establishment of that liability is a prerequisite to recovery from another entity.").

Still, Courts typically have limited a creditor's right to maintain a discharged debtor as a nominal defendant to cases in which the debtor is a "necessary party" to the subsequent action. See e.g. *In re Czuba*, 146 B.R. 225, 228 (Bkrtcy.D.Minn.,1992); *In re Sewell*, 2004 WL 3623506, 2, 53 Collier Bankr.Cas.2d 738, 738 (Bankr.N.D.Ga. Nov 09, 2004); *In re Jet Florida Systems, Inc.*, 883 F.2d 970 (C.A.11 (Fla.),1989); *In re Slali*, 282 B.R. 225, 229, 67 Cal. Comp. Cases 634, 634 (C.D.Cal. May 17, 2002). Most frequently the debtor is deemed "necessary" when the creditor is suing a debtor solely as a prerequisite to recovery against the debtor's insurer, either because the insurance policy itself requires a judgment against the debtor, or because state law forbids direct suits against insurers. Nevertheless, Dr. Pittman contends, and presumably the bankruptcy court agreed, that the applicable Fifth Circuit jurisprudence does not limit the right of a plaintiff to sue a discharged debtor as a nominal defendant to cases in which the debtor is

necessary to establish insurance coverage, but rather expressly recognizes a plaintiff's right to name a debtor when done solely for the purpose of recovering from *any party* other than the debtor.

In *Matter of Edgeworth*, 993 F.2d 51 (C.A.5 (Tex.),1993), relatives of a former patient sought bankruptcy court approval to bring a post-discharge medical malpractice claim against a physician-debtor protected by a bankruptcy discharge. *Edgeworth*, 993 F.2d at 51. Forswearing recovery from the physician-debtor personally, the plaintiffs sought to proceed against him in order to establish the liability of his medical malpractice insurer. *Id.* Reversing the bankruptcy and district courts, the Fifth Circuit permitted the suit against the physician-debtor, finding mere nominal liability of the debtor to be outside the scope of the protection afforded to discharged debtors under § 524(a). *Id* at 54. The court recognized that an insurer's liability is contingent upon that of the insured. Thus, dismissing an insured merely because he receives a bankruptcy discharge would have the unintended effect of allowing the insurer to escape liability. The court found that the "fresh start" policy of the Bankruptcy Code as evidenced by the injunctive effect of a discharge was "not intended to provide a method by which an insurer can escape its obligations based simply on the financial misfortunes of the insured." *Id.*

The question remains whether the ruling in *Edgeworth* compels a similar result in the case *sub judice*. The precise question at issue in *Edgeworth* was whether section 524(a) acts to bar a creditor from pursuing a lawsuit against a discharged debtor in order to collect any judgment solely from the proceeds of his malpractice liability policy. *Edgeworth*, 993 F.2d at 53. Because Texas, the state in which that case arose, does not allow direct actions against insurers, the physician-debtor's liability was an obvious prerequisite to recovery from his insurer. At least

insofar as the record reflects, this case does not involve the question of insurer liability.[3]

On the other hand, many of the same equitable considerations which triggered the court in *Edgewood* to require the discharged debtor to remain a nominal defendant in the liability insurance context exist in cases such as this one, where the debtor's dismissal would place additional evidentiary burdens upon the creditor. During depositions in the State Court Action, at least two witnesses testified to out of court statements made by Ruebush which support Dr. Pittman's claims against the other defendants. As a named party, Ruebush's statements are non-hearsay and admissible into evidence under La. Evid. Code art. 801(D)(2). If Ruebush is voluntarily dismissed, article 801(D)(2) is inapplicable and such evidence may become inadmissible.[4]

It appears that Dr. Pittman's concern about the evidentiary implications of Ruebush's dismissal are well-founded based on St. Patrick's repeated objections to the deposition testimony of Dr. Pittman's witnesses and continued refusal to stipulate to the applicability of art. 801(D)(2) in exchange for Ruebush's dismissal from the State Court Action. In this regard, St. Patrick's seeks to use Ruebush's discharge to it's own advantage to exclude evidence which would be otherwise admissible. The Bankruptcy Code should not be construed to place unnecessary

---

[3] With respect to the issue of insurance coverage, Pittman argues that it cannot be taken as a given that there is no potential insurance coverage for Ruebush's actions since: (1) in the course of the State Court Action, Ruebush has not produced his personal insurance policies, but instead has referred back to St. Patrick's responses about insurance coverage; and (2) St. Patrick has produced only an Officers and Directors Liability Insurance Policy.

[4] Such statements arguably would be admissible under La. Evid. Code art. 801(D)(3), however, under this exception additional elements of proof are required which Dr. Pittman may not be able to establish. In any event, to force Dr. Pittman to rely upon a narrower hearsay exception gives the remaining defendants an evidentiary advantage they would not otherwise enjoy but for Ruebush's discharged status. Neither the text of § 524(a) nor the principles of equity permit such a result.

procedural obstacles in the path of claimants seeking to proceed against third parties who share liability with the debtor.

Accordingly, for the reasons stated herein, it is hereby

ORDERED AND ADJUDGED that the order of the bankruptcy court denying Debtor's motion for contempt is AFFIRMED.

Lake Charles, Louisiana, this __8__ day of June, 2006.

PATRICIA MINALDI
UNITED STATES DISTRICT COURT